morning your honors I'm Jeff Neeson I'm a CJA appointed attorney for mr. Gooch I would like to reserve two minutes of my time all right for rebuttal I know that the court has carefully gone over all the briefing so what I'm going to try to do is simply emphasize those points which I think are most significant about this case obviously the case is controlling this is Strickland and the lead cases out of the ninth circuit all of which I believe I cited the issue basically is the two-pronged analysis and Strickland saying first I have to show that there is in fact been activity by this attorney which is not meet the standard in other words he was in fact ineffective and then the second element is prejudice first let me address the first prong of this the ineffectiveness of counsel first of all I want to tell you I know this attorney he's a fine fellow this is not what the issue is the issue is whether or not his actions in this particular case fell below the standard which we would expect of a criminal defense attorney and I submit that it did the bottom line of this case is that approximately two weeks prior to trial or within 10 days prior to trial the attorney knew and had to have known that the critical government witness which was going to put a gun in the hands of the client was in fact Mr. LeBlanc and that his testimony conflicted directly with the testimony of this mistruth now at that point if you're going to trial it seems to me that you're going to have to muster every bit of evidence that you have to challenge Mr. LeBlanc's position because his testimony is literally all that puts it into the hands of the defendant absolutely puts it it takes it from being just sort of I was around that area when it occurred to being in possession of the weapon how do you balance that with the fact that this unobtained testimony from trout would also implicate your client it may well not may but isn't that sort of the judgment to be made the judgment the council made of damned if you do damned if you don't and I make a strategic decision not to go this route the problem is if I relied as defense counsel on all the reports that I got from the government then I would never have to bother investigating the whole object of this is to find out and get behind those reports find out what trout is really saying is she really conflicting is she telling the truth is she going to be a good witness that's why you have to conduct that kind of examination that's why you have to go find trout to make that decision it became even more important counsel if I could ask you a question certainly didn't the council have grand jury testimony he did and did it include testimony of trout it did so why does he have to go talk to her to ask her did she lie in the grand jury you know if he looks at what she said in the grand jury and decides that's a double-edged sword that it might hurt his client they might be able to use it against the blank but it might also implicate his client what why can't he do that when he's got grand jury testimony as a court is well aware the testimony for the grand jury is stilted and not subject to cross-examination all he has is the which is which at that point is unchallenged with respect to truth we assume that she's testifying grand jury she's being truthful but until it's tested by cross-examination and scrutiny you don't know his only opportunity he may if LeBlanc how do I put this once he knew that trout was not going to be called as a witness and that they were lying solely on LeBlanc's testimony he had to have known or should have known that LeBlanc's testimony conflicts directly at the grand jury level with Trout's testimony LeBlanc goes through and carefully explains what happened and Trout says talks about the same transaction and you cannot reconcile the two now what that gives a jury ultimately at the trial is the is the chance I guess to decide whether LeBlanc's telling the truth or whether Trout's telling the truth or when either of them are but the problem was that the attorney never bothered to interview Trout he may very well had he interviewed I said I said this in the brief had he interviewed Trout and had he gone through whatever he would have done and said to us you know I just didn't care for her I I'm not relying on that would have been I think okay but he didn't do it and we believe that there is still and this comes to the second point which is prejudice we believe that that there may that Trout's testimony remains inherently unbelievable now the government will argue to you wait a minute there's a letter she wrote well if you read carefully the letter the weapon we're talking about in this case is a 25 caliber Beretta the letter that she supposedly writes and all of the circumstances under that letter we don't know talks in terms about a 40 caliber Glock it's it's it's not the same weapon it's not anything if you look at the interview that she supposedly gave which is taped by the government the the interview itself says that she called well the reports say that she called Gooch when you read the interview you find out that she really didn't call Gooch it was her friend who called Gooch and supposedly she was speaking to Gooch let me just stop here I as I understood the strategy it's the defense counsel has to make a decision on what story to shape the case around yes so he's a little bit stuck here with what LeBlanc says and even if LeBlanc isn't in total continuity or congruity with Trout he's really stuck on where his client is and physically and is he at the house and is he a part of this transaction so he stakes out a position kind of over here in effect and says you know what we're just gonna like move my client over here so so none of this happened he can't do that if he has Trout right if if you believe anything Trout says that's why card becomes important he didn't interview card either I think there I think that when you scrutinize this record there is a there these are not reliable witnesses they're not people who tell the truth and either one of them could tell a story which is untruthful and either one of them could have been impeached by both sides of the this event but the point of it is it all is coming in front of the jury the jury has to decide based on that evidence whether or not mr. Gooch is in fact in actively controlled the these weapons or whether or not he's as he claims he's just sleeping on a bed and when the cops came in and you know he reacted they found these pistols when you come back to the first prong on the first prong though of this what would you have a site as authority for your proposition which I understand is that and I one sees it in the capital cases the Supreme Court saying that it's ineffective not to interview members of family witnesses and so on particularly in penalty phase aspects before they make a decision whether or not a tactical decision that you have to lay a proper foundation what what's your best case outside the capital context just for us to say as you were eloquently putting it he could have made the call he made but he did it without talking to the witness before making it I'm not sure I can give you a non-capital case because I'm not familiar enough with all the facts of these things all I know is the Rios case that I cite in the cases I cite in the brief I didn't give you all these string citations I tried it I tried to tell you the cases that I thought were most significant and I believe the analysis in those cases is absolutely appropriate that that had he interviewed these people had he made a learned decision that they shouldn't be called I wouldn't have a chance but he didn't do I'm sure that that's correct in the in the normal case but the question is do you have any precedent that says that counsel has to go forward and interview a witness when counsel has the witnesses sworn testimony before a grand jury on the same subject I do not have I cannot cite your case for that proposition all I can tell you is that that I think as a practitioner in the field I would never rest content to simply rely on a grand jury testimony I that's why I hire investigators that's why we do an independent analysis that's why we look at the facts it may be that that is totally correct it may also be that it's not and in this particular case we have grave doubts as to the credibility of trout as to the credibility of this entire story and that's the reason we filed the appeal thank you thank you good morning may it please the court counsel my name is Tim owns and I'm here from Spokane representing the government in this appeal the trial counsel in this case Dan Johnson provided effective assistance at trial and he had a trout and her testimony that strategy had two parts first it was to interview her if possible the second part of that strategy was not to do anything that would inadvertently bring her into the courtroom or trigger her testifying at trial what did he have available to him in developing that strategy well he had a report of investigation from the ATF agent he had a record a tape recorded interview with the with Elizabeth trout that was transcribed as part of the record here and he had the sworn grand jury testimony of Elizabeth trout and he also had some corroborating information available to him one of that one bit of that was the letter alluded to by counsel in which she discusses a transaction with the defendant a transaction involving a firearm and that letter was discovered by her boyfriend Clark Richardson and that's what triggered that's what that's what opened up the investigation because once trout's boyfriend found that letter he called the ATF agent and said I think there's more to this I think my girlfriend's not telling the truth if you hear out defense counsel on appeal what he's really saying is well how could you even make all those judgments you've never even interviewed the witness I mean you can create a strategy to try to walk your client off that he just happened to roll in there and you can do all that but how how can you fall back on a reason strategy when you haven't even interviewed a key witness that you've decided not to even deal with well that's not what he did he had two parts of the strategy the first part of the strategy was to interview her if possible he hired a private investigator he assigned that prosecutor and keeping that investigator to go interview her and somewhat inexperienced investigator well he was he has a college education he's a licensed investigator yes he had two years of experience at that point in time he worked under the tutelage of his father who was a more experienced investigator and the defense hasn't pointed to anything in his investigation that was defective other than the conclusion that he didn't find trout and therefore he must be must have been an inadequate investigator that's not the conclusion that the trial court arrived at it's not the conclusion that the trial attorney Dan Johnson arrived at he was satisfied with the investigator services who located many witnesses and who actually testified at trial so also the investigator Mr. O'Donnell continued to investigate up until the time of trial and he made several efforts to locate trout it wasn't simply you know one effort to go out and look for her he couldn't find her and reported that but there was a it excerpts a record 109 and 110 so there's been no showing that that investigators did anything wrong or any specific reference to to his conduct or how he proceeded with the investigation shows inadequate counsel if I could ask you a question that's the same on the same line as I asked your colleague for the appellant and that is is there any precedent as to whether the duty of a defense lawyer normally to interview witnesses is affected by by their having sworn testimony like the grand jury testimony in hand on that subject I think I don't know that I haven't seen a case that says that has that fact pattern I think that I would I would point to your honors own opinion in the Glaser case where I meant to put this specifically because I can't recall these by name well that was a case in which a defense attorney there was a element of a conflict in it as well but the defense attorney failed to interview a passenger in a car that was involved in a drive-by shooting and there was some evidence that the passenger may have done the shooting and in that case the court held that when when I'm quoting when the record clearly shows that the lawyer was well-informed and the defendant fails to state what a discovery she or he now claims was necessary the ineffective assistance claim fails and so we're looking at the question of how well-informed was the defense attorney and keep in mind this was a defense attorney that was trying to interview this witness wasn't ignoring that request of his client it just didn't happen but he also had this other concern that even if I interview her I don't I don't see any way that calling her is going to help my case he was fully informed through that that grand jury testimony and through the recorded interview where he could actually sit and listen to her voice on the recording and importantly in this case the defense has interviewed mistrout since the trial through a defense investigator that defense investigator didn't point out any any difference in the information that she provided in her grand jury testimony or in her interview the remainder point there being even if you were to assume the first prong of Strickland it doesn't get you over the second problem I think that's true your honor it goes to prejudice but I think it also goes to the issue of whether or not the defense the trial attorney was was fully informed because in Galazza the court says that the defendant failed to state what additional information would be gained by the discovery and in this case what we had some additional discovery in preparation for the 2255 petition and the defense still hasn't said what additional information would have been provided really what's at the heart of this is just a disagreement about trial strategy what's at the heart of this is current counsel suggests that it would have been a better strategy to have this Hail Mary pass of calling her to the stand and that's not what he's saying not Hail Mary call it to the stand interviewer and then decide whether to make the Hail Mary pass well I think what what my point is I think that that's really what's at the crux of it though because he said I don't think so I think counsel has said we can all stand around and speculate about prejudice the attorney says I made these judgments and Renoso and some of these other cases say that's all very well and good but it's incumbent upon a defense attorney to go talk to the witness find out what they know and I think Judge Gould is honed in on one of the distinguishing characteristics of this case is as you are but nonetheless there is a fairly strong jurisprudence that counsel is supposed to go talk to witnesses and I'm not you know whether there was an adequate investigation to try and really track her down it seemed a little bit half-hearted after a while but in any event I think that's the crux of what counsel is certainly arguing today well I think if the investigation if the impression is that the investigation was half-hearted it's because trial counsel was conflicted and did not in that second part of the strategy not to do anything that would inadvertently bring her into the courtroom was was in the forefront of his mind but that's not something that the investigator was burdened with the investigator was given a task go find her and he was unable to do it and there's been no showing that that was as a result of any specific failure in how do they find her post trial she was in federal custody years later post trial she was actually in federal penitentiary and the new investigator hired by the defense found her in the penitentiary and interviewed her over the phone and again there was nothing new that was developed she still said I talked to the defendant on the phone and he confirmed that he had the Beretta .25 caliber handgun so in the end the defense in this case argues that the defense attorney should have insisted that his investigator find Trout to interview her and I think all that essentially means is he should have asked for a trial continuance and the record reflects that he considered that and he rejected that strategy for good reason and the trial court who sat through the trial heard the witnesses agreed with that as well but that would have been a risky strategy thank you thank you you used up your time but you might want a minute for rebuttal in any I believe Judge Fischer has eloquently indicated what my argument is several quick points I think the record's clear that once he received the grand jury documents once he received the list of witnesses he did not ask the investigator further to go find Trout he he was simply going to accept whatever that result was and I think well we have the record so we'll be able to take care of it second of all this isn't in the record I wanted to see if we could find Trout and we'd well you know what if it's not in the record then we definitely can't okay well the question is my investigator found Trout I have not done anything with that other than I wanted to see if we could find her we could I believe that on this record this is a razor-thin case and I believe that on this record that my defendant was entitled to have full representation for whatever reason it did not occur under these facts thank you thank you case just argued United States versus Gooch is submitted thank you for your argument
judges: McKeown, Fisher, Gould